## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DANIEL J.A. WEBB, | : | |
| Plaintiff, | : | No. 3:17-cv-01623 (SRU) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff, Daniel J.A. Webb ("Webb"), currently confined at Northern Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 challenging his placement in solitary confinement and the conditions there. He names seventeen defendants: Scott Semple, James Dzurenda, Leo Arnone, Brian K. Murphy, Theresa Lantz, John Armstrong, Larry Myers, Angel Quiros, Eduardo Maldonado, Anne Cournoyer, William Mulligan, Jason Cahill, Wayne Choinski, Jeffrey McGill, Kevin Brace, Mark Frayne, and Gerald Gagne. Defendants Dzurenda, Arnone, Murphy, Lantz, Armstrong, Myers, Cahill, Brace, Choinski and McGill are named in their individual capacity only. The remaining defendants are named in both their individual and official capacities. Webb's complaint was received on September 27, 2017, and his motion to proceed *in forma pauperis* was granted on October 11, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief.  28 U.S.C. § 1915A.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    <u>Allegations</u>

Webb makes the following allegations in his complaint.  On September 12, 1991, Webb was sentenced to death and remanded to the custody of the Department of Correction.  He was confined in the F-block segregation unit at Somers State Prison.  On March 17, 1995, then Commissioner John Armstrong ordered Webb transferred to solitary confinement at newly completed Northern Correctional Institution ("Northern"), the most secure facility in Connecticut designed for inmates who could not control their behavior in general population.  Webb has remained in solitary confinement at Northern for 22 years, without any meaningful review to justify the continued confinement.

Solely because he was sentenced to death, Webb has been confined in a small concrete cell with a narrow slit window, 36" x 4", for 24 hours per day.  He is denied contact visits,

educational and vocational opportunities, and group recreation.  The lack of human contact has led to psychological deterioration.

Before being transferred to Northern, Webb was permitted three social contact visits per week with family and friends and one visit every other weekend, group recreation with other death row inmates, the opportunity to work daily, participation in the family picture program, participation in the holiday package program, vocational training and group religious prayer services.  Those privileges were denied at Northern without any warning or process.

Most inmates at Northern are permitted to advance through a phase program and return to general population at another correctional facility.  Webb was not permitted to do so.  Rather he has been confined for 22 years in extreme isolation, with sensory deprivation and restricted movement.  He has limited access to his personal property, limited recreational and cultural opportunities and near total lack of contact with family and friends.

Webb's cell is 12 feet by 7 feet.  In addition to the narrow window, there is a slit window in the cell door of approximately the same size.  The cell contains a metal bunk, a desk with a fixed stool that does not accommodate Webb's size, and a toilet/sink combination near the door. Webb is 6'3" tall and grossly overweight.  He attributes his obesity to the lack of meaningful exercise opportunities.  The mattress is very thin and contributes to Webb's chronic lower back pain.  Webb must bend down to place his hands behind his back through the food trap in order to be restrained for movement outside his cell.  The food trap is 29.5 inches from the floor, causing Webb pain in his knees when bending down to put his hands through the trap.

The cell temperature is often too cold in summer and too hot in winter.  There is much noise from the ventilation system and other inmates.  The ventilation ducts have not been cleaned

in 22 years. Webb claims that his eyesight has worsened as a result of constant exposure to harsh fluorescent lighting. Recreation is conducted outdoors, alone, in a concrete "dog kennel." Inmates must share a coat and are not permitted hats. Unlike Administrative Segregation inmates, Webb is not provided soap, shampoo, deodorant, socks or underwear. Webb experiences some of the documented effects of solitary confinement. He also has severe concentration and memory problems. Webb has been discriminated against regarding job opportunities because of his race. Webb describes various incidents as psychological torture, including interference with mail, denial of medical treatment for toenail fungus and denial of an Islamic diet and congregate services.

Defendants Frayne and Gagne did not perform proper psychiatric and behavioral evaluations on Webb at any time during his 22 years at Northern. They have downgraded Webb's mental health disorders to ensure his continued confinement at Northern.

In April 2012, the State of Connecticut abolished the death penalty prospectively. In August 2015, the Connecticut Supreme Court made the abolishment applicable to all inmates currently on death row. In response to the abolishment of the death penalty, the Connecticut legislature enacted Conn. Gen. Stat. § 18-10b, which provides, *inter alia*, that inmates whose death sentences have been reduced by the court to life imprisonment without the possibility of release will be placed on special circumstances high security status until the inmate is reclassified.

On September 9, 2016, Webb was resentenced to life without the possibility of release. Defendants Semple, Cournoyer, Quiros and Mulligan changed Webb's classification in accordance with the statute. Although two other former death row inmates who were reclassified

under the statute are now permitted to use the gym twice per week, defendant Mulligan denied Webb the same privilege.

II.     Analysis

Webb includes five claims: (1) a challenge to his confinement at Northern for the last 22 years as an ex post facto violation; (2) a challenge to the conditions at Northern as violating the Eighth Amendment; (3) a claim for denial of due process relating to his continued solitary confinement; (4) a claim for deliberate indifference to serious mental health needs against defendants Frayne and Gagne; and (5) a challenge to the murder with special circumstances statute as an ex post facto violation and a claim regarding his confinement pursuant to that statute.

     A.  Ex Post Facto Challenges

Webb asserts two ex post facto challenges, to his confinement at Northern and to the murder with special circumstances statute.  The ex post facto prohibition precluded Congress and the States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  The ex post facto clause applies only to legislative action that increases an inmate's punishment.  It does not apply to laws that are "merely procedural." *Bottom v. Pataki*, 610 F. App'x 38, 41 (2d Cir. 2015) (ex post facto prohibition does not apply to statutes concerning parole).

Webb alleges that after his conviction he was incarcerated at the F-block segregation unit at Somers State Prison. He was afforded contact visits, educational and vocational opportunities and group recreation.  In 1995, however, he was transferred to solitary confinement at Northern

5

and no longer was afforded any of the privileges he previously enjoyed. The Supreme Court has held that requiring that an inmate be housed in solitary confinement pursuant to a statute enacted after the commission of the crime is ex post facto. *See Weaver*, 450 U.S. at 32 ("we have concluded that a statute requiring solitary confinement prior to execution is ex post facto when applied to someone who committed a capital offense prior to its enactment") (citing *In re Medley*, 134 U.S. 160, 167-71 (1890)). Webb was transferred to solitary confinement at Northern upon completion of that facility. It is not clear whether the decision to confine death row inmates in solitary confinement was pursuant to a legislative enactment intended to increase punishment or merely a procedural prison policy. Thus, the court cannot determine on the current record whether this transfer states an ex post facto violation.

The limitations period for filing a section 1983 action is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). While the federal court looks to state law to determine the applicable limitations period, federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues—and the statute of limitations begins to run—"when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). Thus, the court must determine when Webb possessed sufficient facts about the harm done to him that reasonable inquiry would reveal the cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). The court "should look to 'the time of the … act, not the point at which the consequences of the act become[] painful.'" *Coronado v. City of New York*, 2014 WL 4746137, at *3 (S.D.N.Y. Sept. 24, 2014) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

The federal courts also refer to state law for tolling rules. *Wallace*, 549 U.S. at 394.

Webb alleges that he continues to be housed at Northern. Thus, the court assumes that Webb is attempting to assert that his claim satisfied the continuing violation doctrine. The Second Circuit has held that "the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009). The doctrine need not apply, however, in every case. To assert a continuing violation for statute of limitations purposes, the plaintiff must allege two things, the existence of an ongoing policy that violates his constitutional rights and some "non-time-barred acts taken in furtherance of that policy." *Id.*; *see also Patterson v. Anna*, 2018 WL 340023, at *4 (D. Conn. Jan. 9, 2018) (rejecting claim of tolling under continuing violation doctrine for Eighth Amendment deliberate indifference to medical needs claim), *appeal dismissed sub nom. Patterson v. Okonkwo*, 2018 WL 3689966 (2d Cir. May 17, 2018).

Webb generally alleges that "[a]ll of the above named defendants ha[ve] caused, created, authorized, condoned, ratified, approved and knowingly acquiesced in the illegal and unconstitutional and inhumane acts of placing the plaintiff for (22) twenty-two years in the most restrictive punitive segregation unit…." ECF No. 1, ¶ 41. As Webb has included the current Commissioner of Correction as a defendant, the court construes this statement to allege a non-time-barred action in furtherance of the policy of subjecting Webb to unconstitutional conditions of confinement. Accordingly, the first ex post facto claim will proceed.

Webb's second ex post facto challenge is to Connecticut General Statutes § 18-10b, enacted in 2015 after the death penalty was declared unconstitutional. The statute directs the commissioner to establish a reclassification procedure for certain inmates. The statute applies to

any inmate sentenced to life imprisonment without the possibility of release either as a result of conviction of murder with special circumstances committed on or after the death penalty was declared unconstitutional or a sentence of death later reduced or commuted to life imprisonment without the possibility of release.  Conn. Gen. Stat. § 18-10b(a).  The statute directs the Commissioner to establish a reclassification process and affords guidance regarding the confinement of any inmate determined to require confinement in administrative segregation or protective custody.  Conn. Gen. Stat. § 18-10b(b) & (c).  Based on the current record, the court cannot determine whether the statute increases punishment or is merely procedural.  Thus, the second ex post facto claim will proceed at this time.

Webb also contends that this statute is a bill of attainder. The constitutional prohibition on bills of attainder in Article I, section 10, prohibits the state legislature from singling out a disfavored person or group and imposing punishment for past conduct.  *See Bank Markazi v. Peterson*, ___ U.S. ___, 136 S. Ct. 1310, 1325 (2016).   "Briefly stated, a constitutionally proscribed bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Consolidated Edison Co. of New York v. Pataki*, 292 F.3d 388, 346 (2d Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 468 (1977) (quotation marks omitted).

The statute applies to any inmate "convicted of the class A felony of murder with special circumstances committed on or after April 25, 2012 … and sentenced to a term of imprisonment of life imprisonment without the possibility of release" as well as any inmate "in the custody of the Commissioner of Correction for a capital felony committed prior to April 25, 2012 … for which a sentence of death is imposed … and such inmate's sentence is (A) reduced to a sentence

8

of life imprisonment without the possibility of release by a court of competent jurisdiction, or (B) commuted to a sentence of life imprisonment without the possibility of release." Conn. Gen. Stat. § 18-10b(a). On the effective date of the statute, April 25, 2012, the inmates sentenced to death prior to April 25, 2012 were a known group, and the legislature specifically identified that group as a target of the statute. Accordingly, the court cannot rule on the present record that the statute is not a bill of attainder. This claim shall proceed.

Webb also includes a challenge to his confinement under the new statute, arguing that he is treated differently than other inmates classified to the same status. He asserts this claim, however, in another action, *Webb v. Arnone*, No. 3:17-cv-1624(SRU). In the Initial Review Order filed in that case on August 1, 2018, the court dismissed Webb's equal protection claim based on these same allegations and afforded him an opportunity to replead. *Webb v. Arnone*, 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018). Because Webb is litigating this claim in the other case, any equal protection claim is dismissed as duplicative. *See Curtis v. Citibank*, N.A., 226 F.3d 133, 139 (2d Cir. 2000) (plaintiff has no right to maintain two actions on same subject in same court against same defendants at same time).

B. Eighth Amendment Conditions of Confinement Claim

Webb challenges his conditions of confinement as cruel and unusual punishment in violation of the Eighth Amendment. He has been subjected to these conditions for over twenty years. As noted above, the limitations period for filing a section 1983 action is three years and Webb has been aware of his conditions of confinement since his transfer to Northern. Accordingly, all conditions claims for damages prior to September 27, 2014, are dismissed as time-barred. The court will consider only the timely claims against defendants Maldonado,

9

Cournoyer and Mulligan, the only defendants who could have held the position of warden at Northern during the relevant time period. The Department of Correction website indicates that defendants Myers, Choinski, and McGill were wardens at Northern prior to 2011. https://portal.ct.gov/DOC/Facility/Northern-CI (last visited Sept. 4, 2018). All claims against defendants Myers, Choinski, and McGill them are dismissed as time-barred.

To state a cognizable Eighth Amendment claim based on unconstitutional conditions of confinement, Webb must allege facts establishing "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is objectively serious if it deprives Webb of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks omitted)). To meet the subjective component, Webb must allege that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." *Id.* at 185-86.

Webb alleges that the defendants subjected him to conditions of confinement that deprived him of basic human needs including exercise, proper outdoor clothing, proper sanitation and bedding. He is subjected to constant fluorescent light, excessive noise and uncomfortable temperatures. He also alleges that the conditions in the cell have exacerbated medical and mental health conditions. The court concludes that the allegations are sufficient to state a

plausible Eighth Amendment claim. Evidence of conditions prior to September 27, 2014 may be admissible, but the claim for damages is limited to his conditions since September 27, 2014, both before and after he was re-sentenced under the life with special conditions statute.

    C.   Eighth Amendment Deliberate Indifference to Mental Health Needs Claim

Webb also alleges that defendants Frayne and Gagne were deliberately indifferent to his serious mental health needs. The Eighth Amendment forbids deliberate indifference to serious medical [or mental health] needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). To establish a claim for deliberate indifference to a serious mental health need, Webb must allege facts demonstrating two elements.

The first element is objective: "the alleged deprivation of adequate medical [or mental health] care must be sufficiently serious." *Id.* (internal quotation marks omitted). Under this objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical [or mental health] care," and second, "whether the inadequacy in medical [or mental health] care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). Webb alleges that he suffers from unspecified mental disorders that have been exacerbated by his conditions of confinement. For purposed of this ruling only, the court will assume that plaintiff has a serious mental health need that satisfies the objective element of the deliberate indifference standard.

The second element is subjective: the defendants "must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. The inquiry is whether each defendant "has knowledge that an inmate faces a substantial risk of serious harm and ... disregards that risk by

failing to take reasonable measures to abate the harm." *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)) (internal quotation marks omitted). The defendants must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted). Webb alleges that defendants Gagne and Frayne failed to monitor his psychological health the entire time he was held in solitary confinement and deliberately down-played the seriousness of psychological disorders to ensure he remained in solitary confinement. The deliberate indifference claim will proceed at this time.

      D. <u>Due Process Claim</u>

Webb alleges that he has not been provided proper classification reviews to justify his continued solitary confinement for over twenty years. He also alleges that he was denied procedural due process at a disciplinary hearing in 2010. ECF No. 1, ¶ 132(C). Again, the court considers only claims for denial of due process since September 27, 2014.

To assert a due process claim in connection with a classification decision, Webb must show that he had a protected liberty interest in remaining free from the classification and, if he had such an interest, that the defendants deprived him of the interest without affording him due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).

In *Sandin v. Conner*, 515 U.S. 472 (1998), the Supreme Court reexamined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause. *Id.* at 474. The Court explained that for prisoners, a liberty interest warranting due process protection "will generally be limited to freedom from restraint which,

while not exceeding the sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force … nonetheless imposes atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In *Arce v. Walker*, 139 F.3d 329, 334-45 (2d Cir. 1998), the Second Circuit held that the

*Sandin* analysis should be applied to determine whether placement in non-punitive

administrative segregation implicated a protected liberty interest. In *Wilkinson v. Austin*, 545

U.S. 209 (2005), the Supreme Court considered a due process claim regarding classification of

inmates to a high security prison for non-disciplinary reasons. The Court applied the *Sandin*

analysis to determine whether inmates had a liberty interest in avoiding indefinite confinement in

the restrictive high security prison. *Id.* at 223 ("After *Sandin*, it is clear that the touchstone of the

inquiry into the existence of a protected state-created liberty interest in avoiding restrictive

conditions of confinement is not the language of the regulations regarding those conditions but

the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'")

(quoting *Sandin*, 515 U.S. at 484).

Webb has alleged facts describing the conditions of confinement he has experienced

since 1995. Those conditions are significantly different from conditions in general population

and plausibly allege an atypical and significant hardship. Webb alleges that he received no

hearing before the death penalty was abolished, and received one hearing afterward but was not

permitted to participate. The court considers the allegations sufficient at this time for the due

process claim to proceed.

## CONCLUSION

Webb's equal protection claim is **DISMISSED** without prejudice to purusing that claim

in Webb's other case. All Eighth and Fourteenth Amendment claims for damages arising prior to September 27, 2014, are **DISMISSED** as time-barred. The ex post facto challenges, the bill of attainder claim, the Eighth Amendment conditions of confinement and deliberate indifference to mental health needs claims, and the due process claim will proceed as well as the supplemental state law claims.

The court enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants Semple, Dzurenda, Quiros, Maldonado, Cournoyer, Mulligan, Cahill, Brace, Frayne, and Gagne, mail a waiver of service of process request packet containing the Complaint to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Semple, Quiros, Maldonado, Cournoyer, Mulligan, Frayne, and Gagne in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send the plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order

to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or

motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose

to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above. They also may include any and all additional defenses permitted by the Federal

Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order.  Discovery requests need

not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)**

from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response

is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case,

Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so

can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he

is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.

It is not enough to just put the new address on a letter without indicating that it is a new address.

If the plaintiff has more than one pending case, he should indicate all of the case numbers in the

notification of change of address.  The plaintiff should also notify the defendant or the attorney

for the defendant of his new address.

(10)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of October 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge